ATLANTIC COUNTY CIRCUIT COURT.

EARL H. LEEDS, PLAINTIFF, v. THE CITY OF ATLANTIC CITY, A MUNICIPAL CORPORATION, DEFENDANT.

Decided November 27, 1935.

For the plaintiff, *Joseph B. Kauffman*.

For the defendant, *Siracusa & Backer*.

JAYNE, C. C. J.   An examination of the complaint reveals that the plaintiff prosecutes this action to recover damages from the city of Atlantic City to compensate him for certain bodily injuries which he alleges he sustained on November 21st, 1934, while he was attending a football game in the City Convention Hall.   Concisely stated, the complaint declares that the defendant arranged to exhibit this football game in its convention hall to all persons who would pay the required admission fee and that the plaintiff paid the admission fee and occupied a seat on a stand erected for the use of those who were to witness the game.   Additionally it is alleged that the defendant so negligently erected and maintained the stand upon which the plaintiff was seated that it collapsed.

The answer embraces several separate defenses.   The present motion is addressed to the fifth separate defense.   The

averment is that by virtue of chapter 460 of the laws of 1933, the defendant, as a municipal corporation, is exempt from the alleged liability. The statute is as follows:

1. "No county, municipality or school district shall be liable for injury to the person from the use of any public grounds, buildings or structures, any law to the contrary notwithstanding."

2. "This act shall take effect immediately."

It may be incidentally observed that this statute was approved January 10th, 1934, and that the mishap to which the complaint relates occurred on November 21st, 1934. It is contended in behalf of the plaintiff that although this statute became effective prior to the occurrence in which the plaintiff was injured, the enactment does not exempt the city from liability to the plaintiff in the circumstances alleged in the complaint. Therefore the initial inquiry is, whether this statute evinces an intention of the legislature to liberate municipalities from liability for negligence such as is here alleged. In the present action the city is charged with negligence in the construction and maintenance of seats at an entertainment conducted by the city for profit in the municipal convention hall, to which the plaintiff was invited.

In recent years powers of municipal corporations have been gradually expanded and under statutory authority municipalities have been permitted to embark upon activities unrelated to strictly governmental functions and appertaining more to the social and recreational needs of the community, or to the promotion of its growth and development. Such activities transcend the scope of strictly governmental requirements. The immunity of municipal corporations from liability for the negligence of its agents and servants in the performance of governmental functions has not been correspondingly enlarged to encircle negligence in the pursuit of the so-called private or proprietary functions. Thus our courts in recent years have been more frequently concerned with the liability of municipal corporations in tort actions. In the solution of these problems our courts have emphasized a significant distinction between negligence in the perform-

ance of a private or proprietary function and a dereliction of duty in the exercise of a governmental function. In some cases active wrongdoing by the municipality has been a decisive circumstance. An exploration of the reported cases in many states will disclose that the courts, in the absence of a controlling statute, have undertaken to distribute such municipal activities into the mutually exclusive categories of governmental or proprietary functions. Many, if not most, of our own decisions may be found cited by me in *Buffington* v. *County of Atlantic,* 11 *N. J. Mis. R.* 443; 167 *Atl. Rep.* 527. It must be realized that a substantial body of law has now been developed by the courts, relating to the liability of municipalities in actions in tort. At the time of the enactment of this statute in 1933, it was the well established law of this state that "it is only where the business or work of the municipality is confined to the exercise of a strictly governmental function, free from any active wrongdoing, on its part, that immunity from responding in damages to persons injured through the negligence of its public officers, agents or servants, is warranted." See *Olesiewicz* v. *Camden,* 100 *N. J. L.* 340; 126 *Atl. Rep.* 317.

Of course, it is to be presumed that the legislature was aware of this existing state of the law but even so, it is not to be inferred that the legislature intended to make an exceedingly drastic alteration in the established law unless such an intention is clearly expressed or plainly exhibited by the words of the statute. Assuredly the scope and extent of the exemption from liability intended by the legislature to be afforded such municipal corporations by the statute of 1933 is dubious. During the richer years the predominate tendency in state legislatures was to transfer from the injured individual to the municipality the burden of the losses resulting from the neglect of municipal agents and servants, notably with relation to the negligent operation of school busses and other municipally owned motor vehicles. On the other hand, since 1929 statutes have been enacted in some states exempting municipalities from liability due to negligence in the management and operation of municipal airports, which

is an activity uniformly held to be proprietary rather than governmental. Even a limited study of the reported cases in which the courts of other states have been concerned with legislation either restricting or enlarging the liability of municipal corporations in tort, discloses the difficulty encountered by the courts in undertaking to definitely determine the true intent of the legislature from the words used in the statute.

It is not the province of the courts to undertake to dictate to the legislature the words to be used in the enactment of statutes. It is elementary that where the words of a legislative enactment are plain and unambiguous and clearly express the intent of the legislature with respect to a subject within the constitutional sphere of legislation, the courts must be governed by the statutory enactment. It is equally true that courts cannot arbitrarily expand the scope of a statute beyond the natural and literal meaning of its words and in accordance with some conjectural notion of an unexpressed intention on the part of the legislature. Primarily, the intent of the legislature is to be harvested from the language of the statute.

In enacting the statute of 1933, what was the range or sweep of the exemption intended by the legislature? Did the legislature intend to completely eradicate the distinction between negligence of municipal agents in the performance of governmental functions and negligence in the pursuit of private or proprietary functions in its relation to the liability of such municipal corporations for injuries sustained by persons using and only when using "public grounds, buildings or structures?" Were the words "public grounds, buildings or structures" intended to embrace all buildings and grounds used by municipalities for such purposes as convention halls, theatres, radio broadcasting stations, public markets, terminals, wharves, airports, water or electric plants? Or was the word "public" intended to indicate only those buildings and grounds used for strictly public, i. e., governmental objects. Did the legislature intend to exonerate municipalities from liability to those injured by the active wrongdoing of the municipality? Did the legislature intend that municipalities

should continue under existing statutory authority to engage in such private enterprises for gain just as private corporations and nevertheless be clothed with immunity from liability, which immunity is denied to private corporations in precisely the same circumstances?

The convention hall in Atlantic City in which the plaintiff was injured is maintained and the entertainments therein are conducted under statutory authority. *Pamph. L.* 1929, *p.* 396.

It is significant that the legislature in conferring the power to maintain convention halls expressly stated its intent as follows: "It being the intent of this act that such municipality shall be enabled to operate such station or hall in the businesslike manner similar to the methods that would be employed if the station or hall was operated by a private and not a municipal corporation."

Thus the argument of the present motion portrays a situation in which the defendant, a municipal corporation, is lawfully empowered to engage in a business or enterprise, for profit (or in the hope thereof) like a private corporation and yet it is contended that the legislature has by this statute of 1933 liberated the municipality from an obligation to a person wrongfully injured which, in precisely the same circumstances, the private corporation must incure and discharge.

If it may be assumed that the legislature may grant to a municipality, engaged in a private enterprise, an exemption from liability in tort which it denies to private corporations similarly engaged (a point concerning which no opinion is here expressed) yet no such intention on the part of the legislature should be merely surmised. Such an intention should be clearly evident, otherwise it should not be inferred that the legislature intended the statute to be positively repugnant and inimical to the settled law.

The conclusion is that the statute of 1933 does not absolve the defendant from liability to the plaintiff assuming the circumstances alleged in the complaint to be true.

The motion is accordingly granted.