UNITED STATES MORTGAGE TITLE AND GUARANTY COMPANY, A CORPORATION, PLAINTIFF-APPELLANT, v. TOWNSHIP OF TEANECK, A MUNICIPAL CORPORATION, DEFENDANT-RESPONDENT.

Submitted October 31, 1941—Decided January 29, 1942.

For the plaintiff-appellant, Gross & Gross (Benjamin Gross and Bernard A. Green, of counsel).

For the defendant-respondent, Donald M. Waesche.

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. In this case judgment was had by the defendant, Township of Teaneck, a municipal corporation. On its motion the complaint was struck out as failing to disclose a legal cause of action. The complaint is grounded on two theories (1) that plaintiff had a right to compensatory damages under the statute (*R. S.* 54:5-11, *et seq.*) and (2) that it had a right to damages for the negligence of the defendant. In passing, it should be observed that if plaintiff conceives the rule *respondeat superior* applies, the second count is not stated on the theory of master and servant or principal and agent. At least it is not expressly so pleaded though it might be considered as implicit therein. The statute (*R. S.* 54:5-11) does not constitute the designated bonded official an agent of the municipality. The complaint alleges that the plaintiff, a title guarantee company, applied to the Township of Teaneck "for an official search for municipal liens outstanding" on a certain lot located in Teaneck; that continuations thereof, at intervals, were also obtained down to the time when it guaranteed the title as free from municipal liens; that the official search for which the plaintiff paid the statutory fee failed to disclose an outstanding tax sale certificate on the premises in question, issued by the defendant and purchased by the North Jersey Holding Company; that subsequently the holder of the tax certificate instituted foreclosure proceedings (*Cf. North Jersey Holding Co. v. Snow et al.,* 129 *N. J. Eq.* 555) against the owners of the property as well as the mortgagee, as a result of which plaintiff, having guaranteed the title, was obliged to pay to the holder thereof the amount due on the outstanding tax sale certificate.

As to the first count, if there be any remedy or sanction in the statute, *supra,* it must be found in its several provisions. The statute (*R. S.* 54:5-11) ordains that the governing body of each municipality shall by resolution designate a bonded official of the municipality to make examination of the records "as to unpaid municipal liens and to certify the result thereof." The next section of the statute (*R. S.* 54:5-12) directs that such official shall, within fifteen days after receipt of

application for search, "issue a certificate certifying the taxes, assessments or other municipal liens or charges, levied or assessed against the property described in the application, which are liens thereon at the date of the certificate," and that *all* unpaid installments of assessments theretofore levied and in force, whether due or not, shall be included. The next section (*R. S.* 54:5-13) ordains that the certificate provided for in the preceding section "shall include a statement of all tax sales made at any time prior to its date not held by the municipality and not redeemed at the date of the certificate, * * *."

In its endeavor to spell out liability based on breach of statutory duty, plaintiff invokes the sections mentioned, coupled with section *R. S.* 54:5-17 which provides: "A person who shall acquire for valuable consideration *an interest in lands* covered by an official tax search, in reliance on that search, shall hold such interest free from any municipal lien *held by the municipality* not shown on that search." (Italics supplied.) This then is the sanction imposed by statute for failure to report an outstanding lien. It is limited in scope and there is no room for doubt as to who are protected and the liens against which protection is afforded. It is clear that the plaintiff is outside its delimitations. The plaintiff acquired no interest in the lands and the unreported tax lien was not one that was held by the municipality but by a third party. Thus it is that the first count in the complaint fails.

Before leaving this aspect of the case it might serve some useful purpose to point out that by the statute of 1921 (chapter 130, *Pamph. L.* 1921) the provision was that such search should include a statement of any tax sale, made within three months prior to the date of the application for an official search, not held by the municipality, &c. This statute was amended (chapter 59, *Pamph. L.* 1932) to provide that such certificate should include a statement of *all* tax sales made at any time prior to date, not held by the municipality, where there had been no redemption. The 1932 amendment is now *R. S.* 54:5-13; but the companion statute, which affords only limited protection, now known as *R. S.* 54:5-17, was not amended and remains part of our law concerning tax liens,

searches, &c., in substantially the same form as when it was written into the Tax Sale Revision Act of 1918 (chapter 237, *Pamph. L.* 1918, *p.* 886, § 14). Other sections of the statute have been amended, but the section containing limited sanction for an inaccurate search not having been amended or broadened, we must conclude that the legislature purposely left that section (*R. S.* 54:5-17) as it was or that it was *casus omissus*. Whichever be the fact, the statute as it is written affords no basis for the plaintiff's action under the circumstances of this case.

The second count of the complaint is based upon the alleged *negligence* of the municipality. It is said that the Township "failed to exercise reasonable care and neglected to set forth in the aforesaid several searches for municipal liens * * * the aforesaid tax sale certificate which was a lien against the said premises," and, further, that the damages of the plaintiff were due solely to "the carelessness and negligence of the defendant in failing to exercise reasonable care in the making and issuing of tax searches * * *," for all of which plaintiff asks that liability be fixed upon the municipality.

Appellant's argument in support of this count is that it states a good cause of action against the municipality for that kind of negligence for which a municipality is answerable, *i. e.*, positive misfeasance which causes special damage to an individual. This argument is based upon an assumption which is not warranted by the facts pleaded in this count. In general, a municipality is not liable for the acts of its officers done in matters strictly public. In acts of that kind the tort is that of the individual, not of the municipality. Typical examples are found in such cases as *Ansbro* v. *Wallace*, 100 *N. J. L.* 391; *Florio* v. *Jersey City*, 101 *Id.* 535; *Tomlin* v. *Hildreth*, 65 *Id.* 438. The cases upon which the appellant relies, viz.: *Leeds* v. *Atlantic City*, 13 *N. J. Mis. R.* 868; 181 *Atl. Rep.* 892; *Zboyan* v. *Newark*, 104 *N. J. L.* 258; 140 *Atl. Rep.* 225, and *Olesiewicz* v. *Camden*, 100 *N. J. L.* 336; 126 *Atl. Rep.* 317, were instances where the municipalities engaged in private enterprise out of which the tort arose. In the Leeds case the municipality was operating a convention hall; in the Zboyan case, a city market, and in

the Olesiewicz case, an asphalt plant. None of these activities was governmental in character. When a municipality embarks on a private business enterprise it has the same obligations as the law imposes upon an individual and the *respondeat superior* rule applies. The cases on this and alternate principles within the general subject have been carefully collated and analyzed in *Allas* v. *Rumson,* 115 *N. J. L.* 593.

The cited cases and the many references contained in them settle the law of this state that a municipality is not liable for neglect to perform or for negligence in the performance of municipal public duties by municipal officers or employees, although by such performance or non-performance special damage is visited upon an individual. In this situation the *respondeat superior* doctrine has no application. But this immunity does not extend to actions where the injury is the result of active wrongdoing chargeable to the municipality. Apt examples are found in *Hart* v. *Freeholders, 57 N. J. L.* 90; *Kehoe* v. *Rutherford,* 74 *Id.* 659. Compare *Waters* v. *Newark, supra,* and *Allas* v. *Rumson, supra.* Whether the act complained of in this case, *i. e.,* failure on application for search to report an outstanding tax lien, was wrongdoing of this nature is not a subject that we are called upon to determine because the act complained of was not an act of the municipality. To make the municipality answerable for special damages to an individual the act must be one of affirmative wrongdoing, performed by the municipality through its legal representative or agents or chargeable to it as such.

The duty of making such search is an obligation imposed upon a designated official in every municipality in this state by a general statute and every governing body is directed by the statute to designate a bonded official to perform this duty. The bonded official is an agent of the public in the matter and acts for the benefit of the public. True, the search fees charged were, as ordained by statute (54:5-16), paid over to the municipality. But the statute plainly was not one for raising revenue but rather one where the fees charged were intended only to cover the cost of the service. Making a tax search is not an act of the municipality as such; nor is it

anything beneficial to the corporate entity. It is a duty imposed on an official designated by resolution of the governing body, who is not constituted by the statute as the servant or agent of the municipality. His designation as such search official does not make him *ipso facto* agent of the Township. His act was neither directed, controlled nor ratified by the defendant. The doctrine *respondeat superior* has no application here any more than it would have if a police officer made a false arrest or damage was suffered by a citizen because a police officer failed to do his plain duty. (Compare *Valentine* v. *Englewood*, 76 *N. J. L.* 509.)

The second count, based on negligence, does not, on the facts it asserts, make out a cause of action against the defendant.

Judgment affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 16.

*For reversal*—None.